[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 15, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-15103
Non-Argument Calendar

_____

D. C. Docket No. 03-02464-CV-RLV-1

HENRY E. ADAMS,

Plaintiff-Appellant,

versus

COBB COUNTY SCHOOL DISTRICT,
COBB COUNTY BOARD OF EDUCATION,
JAMES WILSON, individually & in his capacity as
Chief Operating Officer,
THOMAS DOHRMANN, individually & in his capacity as
Assistant Superintendent,
FRANK CYR, individually & in his capacity as Chief
of Human Resources,
CHERRY GIPSON, individually & in her capacity as
Principal,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(June 15, 2007)**

Before TJOFLAT, ANDERSON and HULL, Circuit Judges.

PER CURIAM:

Henry Adams, a black male, sued his former employer, the Cobb County School District (District), and four District employees — Thomas Dohrmann, Frank Cyr, Cherry Gipson, and James Wilson[1] — alleging (against the District) claims for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a), 3(a), and (against both the District and the individual defendants) claims for race discrimination, sex discrimination, and retaliation under 42 U.S.C. §§ 1981 and 1983.[2]

In response to a Rule 12(b)(6) motion filed by the individual defendants, the district court dismissed the §§ 1981 and 1983 claims against Dohrmann, Cyr, and Gipson, because those claims, as set forth in Adams's complaint, did not meet the heightened-pleading standard we require for civil rights claims brought against individual defendants capable of asserting qualified immunity. For the same

---

[1] Adams sued these employees in both their individual and official capacities. The district court dismissed as redundant the official-capacity claims against them in light of the fact that their employer, the District, is also a named defendant. See Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991). Adams also sued the Cobb County Board of Education. The district court dismissed the Board on the ground that, under Georgia law, it is not a legal entity capable of being sued. Adams does not challenge these rulings on appeal.

[2] The district court granted summary judgment in favor of the District with regard to Adams's Title VII claims for disparate discipline and hostile-environment discrimination. Adams does not challenge these rulings on appeal.

reason, the district court dismissed the § 1983 claim against Wilson to the extent that it was based on an allegation of race discrimination under the Equal Protection Clause, but refused to dismiss the claim to the extent that it was based on an allegation of unlawful retaliation under § 1981.[3]

Following discovery, the district court granted summary judgment in favor of the District with regard to Adams's Title VII and § 1983 claims for race discrimination and retaliation. The district court also granted summary judgment in favor of Wilson with regard to Adams's §§ 1983 and 1981 claim for retaliation.[4]

On appeal, Adams makes two arguments. First, as a procedural matter, Adams says that the district court erred in granting summary judgment to the District on his "Title VII, § 1983 Equal Protection, and § 1983 - § 1981 retaliation claim based upon the denial of the promotion to the TLC Principal position" because, in Adams's view, "the Defendants failed to move for summary

---

[3] Adams's challenge to the district court's application of the heightened-pleading rule is without merit. See Dalrymple v. Reno, 334 F.3d 991, 996 (11th Cir. 2003) (citing GJR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1367 (11th Cir. 1998)). Moreover, the district court's dismissal of the individual defendants does not affect the outcome of this case. Because his claims against the District proceeded to discovery, Adams had ample opportunity to adduce evidence against the individual defendants in the summary-judgment proceedings, but, as discussed below, failed to create a genuine issue of material fact on his discrimination and retaliation claims. In other words, Adams's claims against Dohrmann, Cyr, Gipson, and Wilson would not have survived summary judgment.

[4] In his brief on appeal, Adams does not challenge the grant of summary judgment to Wilson. We therefore treat Adams's claim against Wilson as having been abandoned. Even if Adams had not abandoned the claim, however, Wilson would be entitled to summary judgment on the merits.

3

judgment . . . on these claims in their initial brief." Appellant's Br. at 25. This argument is without merit. It is clear from a review of both the District's summary-judgment motion, and the initial brief filed in support of that motion, that the District in fact moved for summary judgment on all claims alleged by Adams.

Second, Adams says that the district court erred in granting summary judgment to the District on his Title VII and § 1983 claims. Those claims alleged that the District (1) failed to promote him to the Transitional Leadership Center (TLC) principalship because of his race, and (2) retaliated against him for opposing unlawful discrimination by (a) failing to promote him to the TLC principalship, and by (b) demoting him from an administrative assistant to a teacher. We discuss each of Adams's claims in turn.

## I.

We review de novo a district court's grant of summary judgment, applying the same standard that bound the district court and viewing the evidence and all reasonable inferences in the light most favorable to Adams. See Drago v. Jenne, 453 F.3d 1301, 1305 (11th Cir. 2006). "Summary judgment is appropriate when 'there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law.'" Id. (quoting Fed.R.Civ.P. 56(c)).

## II.

4

## A. Race Discrimination: Failure to Promote

Title VII makes it unlawful for an employer "to fail or refuse to hire . . . any individual, or otherwise to discriminate against any individual . . . because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Intentional discrimination is required under both Title VII and § 1983.[5] See Vessels v. Atlanta Ind. Sch. Sys., 408 F.3d 763, 767 (11th Cir. 2005). Adams says the District refused to promote him to the principalship of the reorganized TLC because he is black. Adams has not supported his claim with direct evidence of discrimination, so we will analyze his claim using the burden-shifting framework reserved for discrimination claims supported by circumstantial evidence, as set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973), and Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089 (1981). See Vessels, 408 F.3d at 767.

Under that framework, Adams must first establish a prima facie case of discrimination. See Crawford v. City of Fairburn, Ga., 482 F.3d 1305, 1309 (11th Cir. 2007). If he is able to do that, a presumption of discrimination is created, and the District, in order to rebut the presumption, must "articulate a legitimate,

---

[5] We do not treat Adams's § 1983 (equal-protection based) failure-to-promote claim against the District separately from his Title VII failure-to-promote claim against the District. "Where, as here, a plaintiff predicates liability under Title VII on disparate treatment and also claims liability under sections 1981 and 1983, the legal elements of the claims are identical . . . [and] we need not discuss plaintiff's Title VII claims separately from his section 1981 and section 1983 claims." Stallworth v. Shuler, 777 F.2d 1431, 1433 (11th Cir. 1985) (emphasis added).

5

nondiscriminatory reason for its actions." Id. If the District is able to articulate a legitimate, nondiscriminatory reason for its actions, "the presumption of discrimination is rebutted, and the burden of production shifts to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination." Id. (citation omitted).

On his failure-to-promote claim, Adams may create a presumption of racial discrimination (i.e., a prima facie case) by showing that: (1) he is a member of a protected class; (2) he was qualified for, and applied for, the TLC principalship; (3) he was rejected for the TLC principalship despite his qualifications; and (4) another equally or less qualified employee, who is not a member of Adams's protected class, was promoted to the TLC principalship. See Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1089 (11th Cir. 2004).

The District has offered two race-neutral reasons for its decision not to promote Adams to the TLC principalship: first, that no such position existed after the TLC was reorganized and, second, that Adams's lack of relevant experience placed him outside the pool of best-qualified applicants for any high-school principalship. The district court determined that "there was no open position of principal to which the plaintiff could be promoted." We may assume for the sake of argument that Adams has established a prima facie case of discrimination.

6

A review of the record leads us to conclude, first, that the District has rebutted the presumed discrimination by offering a legitimate reason for not promoting Adams and, second, that Adams has not shown that the District's reason — Adams was underqualified compared to other principalship applicants promoted by the District — was pretext for race discrimination.

Under the District's promotion policy, an applicant seeking a high-school principalship will not make it into the pool of best-qualified applicants without having accumulated a minimum number of years of experience in a relevant position. This is confirmed by the testimony of Frank Cyr, the District's Chief Human Resources Officer whose job it is to screen employment applications and make initial recommendations, who said that "applicants are generally eligible for promotion <u>only to the next highest position</u> in the school chain of command <u>after some period of satisfactory performance</u>, so that administrative assistant positions would generally be eligible only for promotion to assistant principal positions, who then would be eligible for associate principal positions or principal positions." (Emphasis added). Those seeking promotions are therefore generally expected to ascend the District's "chain of command" only one position at a time. According to Cyr, all things being equal, an applicant will not be considered best qualified for a promotion to the next-higher position in the organizational hierarchy until he

7

completes "a minimum of two, and sometimes many more years of successful experience" in the position immediately below the one to which he has applied. (Emphasis added).

Cyr acknowledged in his deposition testimony that Adams was minimally qualified to be a principal (which is why Adams's applications were not discarded immediately). But Cyr went on to explain that he never considered Adams to be among the best-qualified candidates for a principalship promotion because Adams had never served as an assistant principal. Indeed, Adams does not dispute the fact that at the time he applied for the TLC principalship he was an administrative assistant (two positions lower than a principal in the school "chain of command") and had never held or applied for a position as an assistant principal. This lack of relevant experience, in Cyr's view and in keeping with the District's established promotion policy, rendered Adams uncompetitive as compared to other principalship applicants with the preferred years of assistant-principalship experience. Adams does not dispute Cyr's testimony that, during the time while Adams's applications were pending, every person who was promoted to a principalship in the District — three of whom were white and two of whom were black — "had a minimum of four years experience at the level of assistant principal or higher before they were promoted to principal." This undisputed

8

evidence demonstrates that among other principalship applicants Adams was comparatively underqualified.

Adams has failed to show that the District's reason for not promoting him was not its true reason. He has not pointed out any "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the District's reason for not promoting him. Jackson v. State of Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005). Adams has thus failed to show that the District's reason for not promoting him — a comparative lack of relevant job experience — was pretext for race discrimination. We accordingly affirm the grant of summary judgment in favor of the District on Adams's Title VII and § 1983 discrimination claims.

## B. Retaliation

Title VII prohibits an employer from retaliating against an employee "because [the employee] has opposed any" unlawful discrimination "or because [the employee] has made a charge" of discrimination with the EEOC. 42 U.S.C. § 2000e-3(a) (emphasis added).[6] Like his race discrimination claim, discussed

---

[6] The basis of Adams's § 1983 retaliation claim is an alleged violation of § 1981, which itself prohibits an employer from retaliating against its employee as a response to the employee's complaint of race-based discrimination. See Andrews v. Lakeshore Rehabilitation Hosp., 140 F.3d 1405, 1412-13 (11th Cir. 1998). Because Adams has sued the District, a state-created entity, § 1983 serves as the exclusive vehicle through which Adams must pursue his § 1981-based retaliation claim. See Butts v. County of Volusia, 222 F.3d 891, 892 (11th Cir. 2000). We note that "whether the elements of Title VII and § 1981 retaliation claims are the same is an 'open question' in this Circuit." Bass v. Bd. of County Comm'rs, Orange County, Fla., 256 F.3d 1095, 1120 n.10 (11th Cir. 2001). But because neither party has raised the issue, we will assume

above, Adams's retaliation claim is supported only by circumstantial evidence and will therefore be analyzed using the burden-shifting framework set forth in McDonnell Douglas and Burdine. See Johnson v. Booker T. Washington Broadcasting Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000).

To establish a prima facie case of retaliation, Adams must show: (1) that he engaged in statutorily protected activity; (2) that he suffered an adverse action; and (3) that there is a causal relationship between the protected activity and the adverse action. See Cooper v. Southern Co., 390 F.3d 695, 740 (11th Cir. 2004).

It is undisputed that Adams engaged in statutorily protected activity in 1999 when he filed a charge of discrimination with the EEOC. And it is undisputed that he subsequently suffered two adverse actions — he was denied a promotion to the TLC principalship in late 2002, and he was demoted from an administrative assistant to a teacher in early 2003. Having thoroughly reviewed the record, however, we conclude that Adams cannot satisfy the third element of his prima facie case. That is because Adams has produced no evidence from which a reasonable juror could find a causal link between the filing of the 1999 EEOC charge and the adverse actions to which he was subjected over three years later. See Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 590 (11th Cir. 2000) ("For

---

for purposes of this appeal that the elements of Title VII retaliation and § 1981 retaliation are the same.

10

purposes of a prima facie case, 'close temporal proximity' may be sufficient to show that the protected activity and the adverse action were not 'wholly unrelated.'"); see Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004) ("If there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails a matter of law"); id. ("By itself, the three month period between the September 29 letter and the December 31 incident does not allow a reasonable inference of a causal relation between the protected expression and the adverse action.") (emphasis added). Adams's conclusory assertions will not suffice. Absent evidence tending to link the events together, the filing of the 1999 EEOC charge is simply too remote in time from the occurrence of the adverse actions to permit an inference of causation.

Apart from the filing of the 1999 EEOC charge, Adams says that he engaged in statutorily protected activity — specifically, "opposition" activity — when he (1) complained to Gipson in September 2002 that "he was being discriminated against because of his race and retaliated against because of his prior EEOC charge," (Appellant's Br. at 33) and when he (2) sent a letter on September 9, 2002, to Dohrmann, Redden, Beers, and Cyr, part of which stated: "[I]f Cobb County is truly An Equal Opportunity Employer, then, I request that you will do

11

the right thing and recommend that I be promoted to Principal of the TLC." (Id.) The District says that this conduct does not amount to statutorily protected activity under Title VII and that, as a result, Adams cannot make out a prima facie case of retaliation. We agree.

Adams can establish that he engaged in statutorily protected activity under Title VII's opposition clause only if "he shows that he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." Little v. United Tech., Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir. 1997) (emphasis added). Adams must show not only that he subjectively believed he was being discriminated against (that is, that the District was refusing to promote him to the TLC principalship because he is black and because he earlier filed a charge of discrimination), but also "that his belief was objectively reasonable in light of the facts and record presented." Id. We have said that "[t]he objective reasonableness of an employee's belief that [his] employer has engaged in an unlawful employment practice must be measured against existing substantive law." Clover v. Total Sys. Serv., Inc., 176 F.3d 1346, 1351 (11th Cir. 1999).

There is no doubt but that Adams subjectively believed he was being discriminated against. He says that his subjective belief was objectively reasonable based on the following circumstances: (1) that historically, the North TLC and the

12

South TLC each had its own principal; (2) that he was "led to believe" by other District employees that a TLC principalship would be advertised; (3) that the District's website briefly listed him as a principal; (4) that the student population had increased, while the number of principals had decreased; and (5) that Dohrmann told Adams that he was "in charge" of the TLC.

Taking the record in the light most favorable to Adams, we readily conclude that this evidence falls well short of making it "objectively reasonable" for Adams to believe that the District's decision not to promote him to the TLC principalship was based on his race or his three-year-old EEOC charge. See Clover, 176 F.3d at 1351 ("[T]he conduct opposed [need not] actually be [racial or retaliatory discrimination], but it must be close enough to support an objectively reasonable belief that it is."). Adams's belief that the circumstances he has identified tend to show racial or retaliatory discrimination is plainly unreasonable in light of both the "facts and record presented," Little, 103 F.3d at 960, and "existing substantive law," Clover, 176 F.3d at 1351. Because it was not objectively reasonable for Adams to have believed that the District was unlawfully discriminating against him, the complaints Adams made to other District employees do not amount to statutorily protected activity. Without that element, Adams has failed to make out a prima facie case of retaliation. Accordingly, we affirm the district court's grant

13

of summary judgment in favor of the District on Adams's Title VII and § 1983 retaliation claims.

## III.

For the reasons stated above, we conclude that the district court (1) properly dismissed Adams's § 1983 claims against Dohrmann, Cyr, Gipson, and Wilson, and (2) properly granted summary judgment in favor of the District on Adams's Title VII and § 1983 claims of race discrimination and retaliation. Accordingly, the judgment of the district court is

**AFFIRMED.**